**John J. STANTON, Appellant,**

v.

**Carl W. CHASE, Appellee.**

**No. 84–233.**

District of Columbia Court of Appeals.
Submitted March 12, 1985.
Decided Aug. 29, 1985.

John J. Stanton pro se.

Inez Smith Reid, Corporation Counsel, and John H. Suda, Principal Deputy Corporation Counsel, Charles·L. Reischel, Deputy Corporation Counsel, Lutz Alexander Prager and Karen J. Krueger, Asst. Corporation Counsel, Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and NEWMAN and TERRY, Associate Judges.

PRYOR, Chief Judge:

In this case, appellant John J. Stanton alleges that appellee Carl W. Chase slandered him on two occasions in statements made to trial judges of the Superior Court. Both of appellee's allegedly slanderous statements were made in private meetings with the trial judges, held for the purpose of assigning attorneys to represent indigent clients under the Criminal Justice Act (hereinafter the CJA) D.C.Code §§ 11–2601 *et seq.* (1981 & 1982 Supp.). In the trial court, appellee made a motion to dismiss appellant's complaint, which was granted. On appeal, appellant claims that the trial court erred in granting the motion. We find that appellee's statements here fall within the scope of judicial immunity which is accorded persons performing ministerial functions at the direction of a judge in furtherance of a judicial act. Consequently, we conclude that the statements were absolutely immune and the motion to dismiss was properly granted.

I

The CJA was enacted "to insure that persons charged with crimes in the District of Columbia who are financially unable to obtain an adequate defense ... are provided with legal representation." *See Thompson v. District of Columbia,* 407 A.2d 678, 680 (D.C.1979) (citation omitted). Counsel furnishing representation under the CJA are selected from panels designated and approved by the court. *See* D.C.Code § 11–2602 (1981). Under the CJA, the court has sole responsibility for the appointment of counsel to represent persons financially unable to obtain representation. *Id.*

Appellee, Carl W. Chase, is Deputy Chief of the Criminal Justice Act Office of the District of Columbia Public Defender Service (hereinafter CJA Office). As Deputy Chief of the CJA Office, Mr. Chase is authorized to maintain records concerning at-

torneys eligible to participate in the CJA program, and to receive information from such attorneys on their availability to accept cases. In addition, Mr. Chase is required to confer with judges, as needed, to assist them in the appointment of counsel. Mr. Chase's role in these conferences is to respond to the requests of the assigning judge for information on matters such as clients needing representation, the availability and background of attorneys approved for CJA appointment, and any logistical problems posed by the assignment of a particular attorney to a given case. The conferences between Mr. Chase and trial judges concerning the appointment of CJA attorneys are private.

Appellant, Mr. John J. Stanton, is an attorney who has represented indigent clients under the CJA. On February 15, 1983, this court's Board of Professional Responsibility (the Board) recommended that appellant be suspended from the practice of law for one year and one day for neglecting, and opposing the interests of, two of his CJA clients. *See In re Stanton,* 470 A.2d 272, 273–81 (D.C.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984) (hereinafter *Stanton I* ). Also on February 15, 1985, the Board, in two additional cases, recommended that appellant be suspended from the practice of law for sixty days for neglect of legal matters and failure to seek the lawful objectives of two clients. *See In re Stanton,* 470 A.2d 281, 283–92 (D.C.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984) (hereinafter *Stanton II* ).[1] On November 30, 1983, this court adopted, accepted, and approved the Board's recommendation, and suspended Mr. Stanton from the practice of law for one year and one day. *Stanton I, supra,* 470 A.2d at 272–73 (one-year and one-day suspension); *Stanton II, supra,* 470 A.2d at 282 (sixty-day suspension).

---

1. The Board recommended that this sixty-day suspension run concurrently with the one-year and one-day suspension in the companion case.

Appellant's complaint, filed eight days before this court issued its decisions in *Stanton I* and *Stanton II*, alleged that appellee slandered him on two occasions after the Board had recommended his suspension. Both of appellee's allegedly slanderous statements were made to Superior Court judges in private conferences concerning the appointment of attorneys to CJA cases. One allegedly slanderous statement was made on February 26, 1983, when appellee is claimed to have told a Superior Court judge that appellant was ineligible for CJA appointment because he had already been suspended. The second was on April 23, 1983, when appellee allegedly made a similar remark to a second Superior Court judge. Appellant claims that he protested the first alleged false statement to appellee. While appellant does not claim that he was deprived of any right to represent indigent persons under the CJA as a result of appellee's allegedly false statements, he asserts that the second statement "was deliberately and maliciously intended to injure [him] in his profession and lower him in the estimation of the judicial community." Appellant sued appellee in his individual capacity for damages in the amount of ten thousand dollars.

Appellee moved to dismiss appellant's complaint, or in the alternative, for summary judgment. Appellee's motion to dismiss was granted *without* a hearing. This appeal followed.

II

Appellant claims that the trial court erred in granting appellee's motion to dismiss. In support of his position, he argues that appellee's statements were not absolutely privileged, and that under a qualified privilege, the factual allegations in his complaint were sufficient to defeat a motion to dismiss. We disagree because we find that appellee's statements were indeed absolutely privileged under the doctrine of judicial immunity as extended to certain court personnel.

The doctrine of judicial immunity is deeply engrained in the law in this country. As early as 1872, the Supreme Court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872).

 In general, judicial immunity will protect a judge from liability for a given act if two conditions are met. First, the act must not have been taken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted). Second, the act must be a "judicial act." *Id.* at 360–62, 98 S.Ct. at 1106–1108. *Sparkman* outlined the contours of a "judicial act" as follows:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.

*Id.* at 362, 98 S.Ct. at 1107–1108.

 Under this two-factor analysis, it is clear that the appointment by Superior Court judges of counsel under the CJA is a judicial act. Under the CJA, only the trial court is authorized to appoint attorneys to represent indigent clients. *See* D.C.Code § 11–2602 (1981). Thus, this is a function "normally performed by a judge." *Stump v. Sparkman, supra*, 435 U.S. at 362, 98 S.Ct. at 1107–1108; *see also Slavin v. Curry*, 574 F.2d 1256, 1263–64 (5th Cir.1978) (judge's alteration of trial transcript a judicial act because selection and supervision of court reporters a function assigned to judges under Texas law), *overruled on other grounds, Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Moreover, in the private meetings at issue, Mr.

Chase was certainly aware that he was dealing with the assigning judges in their judicial capacity as the persons solely authorized by statute to appoint CJA counsel. Because the appointment of counsel under the CJA was a judicial act, therefore, judicial immunity protected the trial judges from tort claims arising from actions taken pursuant to these appointments.

■ The case law has recognized that the protection of judicial immunity is not confined only to judges. Rather, judicial immunity "extends to other officers of government whose duties are related to the judicial process." *Barr v. Mateo*, 360 U.S. 564, 569, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434 (1959); *see also Waits v. McGowan*, 516 F.2d 203, 207 (3d Cir.1975) (immunity extended to investigator for Public Defender Service because function directly related to the judicial process); *Sullivan v. Kelleher*, 405 F.2d 486, 487 (1st Cir.1968) (judicial immunity extended to clerk of court); *Agnew v. Moody*, 330 F.2d 868, 870 (9th Cir.1964) (judicial immunity extended to clerks, bailiffs, and court reporters because duties "clearly" related to judicial process), *cert. denied*, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); *Acevedo by Acevedo v. Pima County Adult Probation Department*, 142 Ariz. 319, 322, 690 P.2d 38, 41 (1984) (probation officers, in preparing and submitting presentence reports to the court, have absolute immunity because presentence report is an integral part of judicial sentencing process); *cf. In re Nace*, 490 A.2d 1120, 1124 (D.C.1985) (under court rule, Bar Counsel has absolute immunity from disciplinary complaint). In particular, judicial immunity has been extended to court employees performing ministerial functions at the direction of a judge. *See, e.g., Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) (judicial immunity extended to court clerk in filling out commitment papers because carrying out official directives of judge); *Smith v. Rosenbaum*, 460 F.2d 1019, 1020 (3d Cir.1972) (court clerk has immunity for performance of ministerial acts mandated by statute); *Haldane v. Chagnon*, 345 F.2d 601, 604 (9th Cir.1965) (bailiff, acting at direction of judge, is part of "the body of the court" and "is entitled to the protection of the judicial immunity which surrounded the whole court").[2]

■ The facts of this case fall squarely within the scope of judicial immunity which is accorded persons performing ministerial functions at the direction of the judge in furtherance of a judicial act. Here, appellee's allegedly slanderous statements were made to judges in private meetings held solely for the purpose of assigning attorneys to represent indigent persons under the CJA. Appellee's role in these meetings was to supply, upon request, information to the trial judges to assist them in the performance of the judicial act of appointing CJA attorneys. In supplying the requested information, therefore, appellee was performing a ministerial function at the direction of a judge. Accordingly, judicial immunity insulates appellee from liability for any factual misstatements about appellant's background or disciplinary status he may have made in the course of performing this function.

*Affirmed.*

---

2. Courts have also extended judicial immunity to persons performing quasi-judicial or discretionary functions delegated by the court. *See, e.g., T & W Investment Co. v. Kurtz*, 588 F.2d 801, 802 (10th Cir.1978) (judicial immunity for court-appointed receivers); *Byrne v. Kysar*, 347 F.2d 734, 736 (7th Cir.1965) (members of court-appointed medical commission have judicial immunity because performing a quasi-judicial function), *cert. denied*, 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed.2d 668 (1966).