Nettie CUNNINGHAM, et al.,
Appellants,

v.

DISTRICT OF COLUMBIA, et al., Appellees.

No. 89–898.

District of Columbia Court of Appeals.

Argued Sept. 21, 1990.
Decided Dec. 28, 1990.

---

Greta C. Van Susteren, for appellants. John P. Coale and Phillip B. Allen were on brief, for appellants.

Janet L. Maher, Asst. Corp. Counsel, with whom Herbert O. Reid, Corp. Counsel, Charles L. Reischel and Ann O'Regan Keary, Deputy Corp. Counsel, were on brief, for appellees.

Before FERREN, TERRY, and FARRELL, Associate Judges.

TERRY, Associate Judge:

Ricky Brogsdale, a parolee under the supervision of the District of Columbia Board of Parole, shot seven women during a six-week period in September and October 1987. Two of the women died; the other five suffered various injuries, some of them extremely serious. The five surviving victims and the estates and next of kin of the two decedents filed this action against the District of Columbia, Dr. Peter Roemer, and "John Doe One through John Doe Twenty and Jane Doe One through Jane Doe Twenty," all of whom were alleged to be employees of the District of Columbia or Saint Elizabeths Hospital. Seeking damages for the injuries caused by Mr. Brogsdale, the plaintiffs (appellants here) alleged malpractice and negligence on the part of Dr. Roemer, a psychiatrist employed by the District of Columbia who had been directed by the parole board to examine Brogsdale. The claim against the District was based on a theory of *respondeat superior.* The trial court dismissed the complaint against the District of Columbia under Super.Ct.Civ.R. 12(b)(6) for failure to state a claim,[1] and dismissed the complaint against Dr. Roemer "because his actions taken with respect to Ricky Brogsdale were part of a quasi-judicial function, and thus he is immune from civil tort liability." We affirm the trial court's dismissal of appellants' complaint in all respects.[2]

1. As to two of the plaintiffs, Sadie Turner and Gladys Shaw, the court dismissed the complaint on the additional ground that they had failed to provide to the Mayor timely written notice of their claim. D.C.Code § 12–309 (1989) requires anyone with a claim for "unliquidated damages to person or property" to give notice in writing to the Mayor "of the approximate time, place, cause, and circumstances of the injury or damage." If such notice is not given, an action against the District "may not be maintained...."

2. Although the John Does and the Jane Does were never served with process, the District asserted below that the complaint failed to state a claim "as to all defendants because the decisions made with respect to Ricky Brogsdale violated no duty owed to plaintiffs." The court evidently agreed, for it dismissed the entire complaint, thereby making its decision appeal-

## I

The pertinent facts are not in dispute. Ricky Brogsdale was paroled on May 11, 1987, after serving part of a sentence for carrying a pistol without a license. On June 25, less than two months later, he was arrested on a charge of indecent exposure. Shortly thereafter he was released by the court, although the circumstances of his release are not clear from the record. Despite Brogsdale's arrest, the parole board decided not to revoke his parole at that time, postponing any determination until after the new charge of indecent exposure was resolved. Brogsdale pleaded guilty to that charge on October 23, 1987.

In the meantime, between September 6 and October 17, Brogsdale shot and wounded seven women, two of them fatally. In 1989 he was convicted of first-degree murder in connection with the death of Yvonne Watts, whose mother is one of the appellants in this case, and of various assault charges arising from the shootings of three of the other appellants.

Appellants' complaint alleged that before and during the period when Brogsdale committed his criminal acts, he was both evaluated and treated by Dr. Peter Roemer at the behest of the parole board. Dr. Roemer was at that time employed by the Bureau of Forensic Psychiatry, an agency of the District of Columbia. *See* D.C.Code § 24–106 (1989). Appellants asserted that he had breached an affirmative duty of care by erroneously advising the parole board that Brogsdale presented no danger to the community, and that his breach of this duty was the proximate cause of their injuries because the parole board, relying on Roemer's advice, allowed Brogsdale to remain at liberty instead of revoking his parole.

■ The trial court ruled that appellants' claims were barred by the public duty doctrine because the District of Columbia and its agents had violated no duty owed to appellants. This ruling was plainly correct. *See, e.g., Klahr v. District of Columbia,* 576 A.2d 718, 719 (D.C.1990); *Akins v. District of Columbia,* 526 A.2d 933, 935 (D.C.), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987); *Morgan v. District of Columbia,* 468 A.2d 1306, 1310–1311 (D.C.1983) (en banc); *Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C.1983); *Warren v. District of Columbia,* 444 A.2d 1, 3 (1981) (en banc).[3]

■ The dismissal of the claims of appellants Turner and Shaw on the alternative ground that they had failed to give timely notice under D.C.Code § 12–309 (see note 1, *supra*) was likewise correct. Turner and Shaw assert that a police report can meet the statutory requirement of notice,[4] and that each of the shootings committed by Brogsdale was the subject of such a report. We have repeatedly held, however, that section 12–309 must be strictly construed, *e.g., Campbell v. District of Columbia,* 568 A.2d 1076, 1078 (D.C.1990), and that a police report must meet specific criteria to serve as the requisite notice. *See Allen v. District of Columbia,* 533 A.2d 1259, 1261–1263 (D.C.1987); *Jenkins v. District of Columbia,* 379 A.2d 1177 (D.C.1977); *Miller v. Spencer,* 330 A.2d 250, 251–252 (D.C.1974); *Brown v. District of Columbia,* 304 A.2d 292 (D.C.1973). Appellants failed to show that the police reports about the particular events in question here met the requirements of section 12–309. We find no error whatever in the trial court's ruling on this point.

able. *See Moradi v. Protas, Kay, Spivok & Protas,* 494 A.2d 1329, 1332 n. 6 (D.C.1985).

**3.** Appellants, seeking to hold the District liable, place great reliance on *Rieser v. District of Columbia,* 183 U.S.App.D.C. 375, 563 F.2d 462 (1977), *modified in part,* 188 U.S.App.D.C. 384, 580 F.2d 647 (1978) (en banc). We agree with the District that *Rieser* is distinguishable on its facts. Even if it were not, *Rieser* is not binding on us. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). To the extent, if any, that *Rieser* may be inconsistent with *Warren, Platt, Morgan, Akins, Klahr,* and similar decisions from this court, we would be bound to follow those decisions as controlling and therefore to reject *Rieser* as authority.

**4.** Section 12–309 provides in pertinent part: "A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."

The only matter that calls for more than cursory discussion—indeed, the only aspect of this case that prompts us to issue a published opinion—is the trial court's ruling with respect to Dr. Roemer. To that we now turn.

## II

"[T]he immunity of judges from liability for damages for acts committed within their judicial jurisdiction" is a strongly founded doctrine in the law of our nation. *Pierson v. Ray*, 386 U.S. 547, 553–554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Indeed, the doctrine can be traced back to the Middle Ages, antedating the nation itself by several centuries. It serves to "[protect] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988), citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 348, 20 L.Ed. 646 (1871). Judicial immunity is "a general principle of the highest importance to the proper administration of justice" because it permits a judicial officer to exercise his or her judicial authority freely and impartially, without apprehension of personal liability for what some disappointed litigant may regard as a wrong decision. *Id.; see Forrester v. White, supra,* 484 U.S. at 226–227, 108 S.Ct. at 543–544. This immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Bradley v. Fisher, supra,* 80 U.S. (13 Wall.) at 347. A judge will be subject to liability only when he or she "has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (citation omitted).

District of Columbia case law accords judges immunity from liability for acts done in their judicial capacity if the particular act at issue is a "judicial act." *Stanton v. Chase,* 497 A.2d 1066, 1068 (D.C.1985), citing *Stump v. Sparkman, supra,* 435 U.S. at 360–362, 98 S.Ct. at 1106–08. Although that term is difficult to define with precision, the Supreme Court offered a working definition in *Stump:*

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and the expectations of the parties, *i.e.,* whether they dealt with the judge in his official capacity.

*Id.* at 362, 98 S.Ct. at 1107. More recently, in *Forrester v. White, supra,* a unanimous Supreme Court, considering "the class of acts entitled to immunity," focused on the difference between "truly judicial acts" and "acts that simply happen to have been done by judges.... [I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." 484 U.S. at 227, 108 S.Ct. at 544 (emphasis in original).

It is also firmly established—and of particular significance in this case—that the protection of judicial immunity is not limited to judges themselves, but extends also to "other officers of government whose duties are related to the judicial process." *Barr v. Matteo,* 360 U.S. 564, 569, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434 (1959). In the District of Columbia judicial immunity has been bestowed upon a variety of public officials and employees when two conditions are met. First, their activities must be integrally related to the judicial process; second, they must exercise discretion comparable to that exercised by a judge. *Capitol Terrace, Inc. v. Shannon & Luchs, Inc.,* 564 A.2d 49, 52 (D.C.1989) (court-appointed receiver); *Stanton v. Chase, supra,* 497 A.2d at 1066 (Public Defender Service employee recommending attorneys to the court for appointment in criminal cases); *Turner v. Barry,* 272 U.S.App.D.C. 377, 378, 856 F.2d 1539, 1540 (1988) (probation officer); *Simons v. Bellinger,* 207 U.S.App.D.C. 24, 30–32, 643 F.2d 774, 780–782 (1980) (court-appointed committee on unauthorized practice of law); *Schinner v. Strathmann,* 711 F.Supp. 1143 (D.D.C. 1989) (psychiatrist who interviewed criminal defendant to assist judge in determining defendant's competency to stand trial). Other courts, including the Supreme Court,

have ruled likewise, holding immune from liability those whose primary function was to assist a judge or a court in the administration of justice.[5]

The Supreme Court's decision in *Forrester v. White, supra,* does not undermine these precedents, either those involving judges or those involving other public officials. *Forrester* merely acknowledges that "[r]unning through our cases, with fair consistency, is a 'functional' approach to immunity questions...." 484 U.S. at 224, 108 S.Ct. at 542.

### III

■ Applying these principles to the case at bar, we quickly conclude that the trial court properly dismissed appellants' claims against Dr. Roemer. We agree with the Ninth Circuit, following the functional approach of *Forrester v. White,* that parole boards are shielded by judicial immunity when they perform their official duties:

> [P]arole board officials perform functionally comparable tasks to judges when they decide to grant, deny, or revoke parole. The daily task of both judges and parole board officials is the adjudication of specific cases or controversies. Their duty is often the same: to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake. They face the same risk of constant unfounded suits by those disappointed by the parole board's decisions.
>
> ... The adjudicatory process simply could not work if the adjudicator had to

anticipate a possible lawsuit from every dissatisfied litigant.

We believe that the same degree of protection must be accorded to the decision-making process of parole board officials.

*Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981); *accord, Johnson v. Rhode Island Parole Board Members,* 815 F.2d 5, 7 (1st Cir.1987); *Nelson v. Balazic,* 802 F.2d 1077, 1078 (8th Cir.1986); *Walker v. Prisoner Review Board,* 769 F.2d 396, 398 (7th Cir.1985), *cert. denied,* 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986); *Pope v. Chew,* 521 F.2d 400, 405 (4th Cir.1975); *Doe v. United Social & Mental Health Services, Inc.,* 670 F.Supp. 1121, 1124 (D.Conn.1987); *see Martinez v. California,* 444 U.S. 277, 280–283, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (rejecting due process challenge to statute immunizing state officials from liability for damages resulting from releasing a prisoner on parole). The only remaining question for us is whether the judicial immunity of the parole board is broad enough to embrace Dr. Roemer, who examined Mr. Brogsdale at the board's direction. We hold that it is.

It is undisputed that Dr. Roemer was directed by the parole board to evaluate and treat Brogsdale for his abnormal behavior. Dr. Roemer was in the employ of the Bureau of Forensic Psychiatry, an agency created to assist judges, probation officers and other court personnel, officials of the Department of Corrections, and the

---

5. *Imbler v. Pachtman,* 424 U.S. 409, 421–424, 96 S.Ct. 984, 990–992, 47 L.Ed.2d 128 (1976) (prosecutors immune when initiating and pursuing a criminal prosecution); *Sparks v. Character & Fitness Committee,* 859 F.2d 428, 433 (6th Cir. 1988) (members of bar examining board immune because determination of eligibility for membership in bar is a judicial act), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *Myers v. Morris,* 810 F.2d 1437, 1465–1467 (8th Cir.) (court-appointed guardians and therapists have absolute immunity not only for testimony but also for reports and recommendations to the court), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Demoran v. Witt,* 781 F.2d 155, 157 (9th Cir.1986) (probation officers immune when preparing

pre-sentence reports for a judge); *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984) (psychiatrist, psychologist, and guardian *ad litem* involved in termination of parental rights case entitled to absolute immunity); *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980) (commissioners conducting partition sale of property immune); *Mosher v. Saalfeld,* 589 F.2d 438, 442 (9th Cir.1978) (court-appointed guardian for incompetent immune while performing duties necessary to conserve estate), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979); *Smallwood v. United States,* 358 F.Supp. 398, 404 (E.D.Mo.) (referee and trustee in bankruptcy immune because they are officers of bankruptcy court), *aff'd,* 486 F.2d 1407 (8th Cir. 1973).

parole board "in carrying out their duties." D.C.Code § 24–106 (1989). Appellants' complaint itself alleged that at all relevant times Dr. Roemer was "employed in the capacity of a forensic psychiatrist by the District of Columbia and/or St. Elizabeth's [*sic*] Hospital" and was "at all times acting within the course, scope, and purpose of [his] employment...." The complaint further alleged that the parole board ordered Brogsdale to maintain his visits to Dr. Roemer twice a week for examination, treatment, and psychiatric evaluation as a condition of his continued release. Thus the complaint's assertion of liability depended on acts done by Dr. Roemer as a District of Columbia employee, performing his official duties in aid of the parole board's decision whether to allow Brogsdale to remain on parole.

We hold that appellants' complaint failed to state a claim against Dr. Roemer. Brogsdale was evaluated and treated by Dr. Roemer, not as a private citizen, but as a parolee on conditional release. Dr. Roemer himself was in the employ of the District of Columbia, performing those functions for the parole board which he had a statutory duty to perform. He was acting within the scope of his official duties by assisting the parole board in deciding whether or not to revoke Brogsdale's parole. He was therefore entitled to the protection of the parole board's judicial immunity, and the complaint based on his actions with respect to Mr. Brogsdale was properly dismissed under Super.Ct.Civ.R. 12(b)(6).[6]

*Affirmed.*

---

6. The complaint also alleged in the alternative that Dr. Roemer was an independent contractor. Whether he was an employee or an independent contractor, however, is not dispositive here. What gives him immunity is the fact that he acted at the direction of the parole board, in aid of that board's performance of its adjudicatory duties, so that the parole board's immunity extends to him as well.