Kenneth J. LOEWINGER and
Loewinger & Brand PLLC,
Appellants,

v.

Clement STOKES, Appellee.

Nos. 06–CV–1077, 06–CV–1076.

District of Columbia Court of Appeals.

Argued March 6, 2008.
Decided July 30, 2009.

Robert Corn–Revere, with whom Amber L. Husbands was on the brief, Washington, for appellant Kenneth Loewinger.

Samuel M. Shapiro for appellant Loewinger & Brand, PLLC.

Emily Johnson Henn filed a statement in lieu of a brief, Washington, for appellee Clement Stokes.

Eric Angel, with whom Barbara McDowell was on the brief, for the Legal Aid Society of the District of Columbia as amicus curiae.

Before REID and KRAMER, Associate Judges, and SCHWELB, Senior Judge.

KRAMER, Associate Judge:

These appeals challenge an order of the Superior Court holding appellants in civil contempt for having filed a landlord and tenant suit for possession based on non payment of rent, even though a receiver had been appointed by the court to administer—and enforce—payment of rent by tenants of the rental property. In a thorough and scholarly opinion, Judge Kravitz found that Lanier Associates (the owner of the property) and its former lawyers had violated "the clear and unambiguous directives of the receivership order by prosecuting this nonpayment action," and that none had "established any cognizable defense to civil contempt." Accordingly, the judge dismissed the underlying suit without prejudice and imposed other remedial sanctions "aimed at preventing further violations of this and other receivership orders and at compensating Mr. Stokes for further losses he has sustained as a result of the respondents' contumacious conduct."

■ The respondents Kenneth Loewinger and Loewinger & Brand, PLLC, have brought this appeal. We affirm the contempt order for the reasons stated by Judge Kravitz, whose opinion we adopt and append hereto. We add only the following brief observations, which assume familiarity with the judge's opinion.[1]

■ Appellants question the judge's conclusion that the receivership order was unambiguous, arguing that ambiguity—

1. Appellants later moved to discharge the civil contempt citation as to them, stating that they had settled with tenant Stokes for payment of his costs and attorney's fees and had complied with the court's other directives. Judge Kravitz then ordered "that the law firm of Loewinger & Brand, PLLC and Kenneth J. Loewinger, Esquire, have purged themselves of their civil contempt and ... are no longer in civil contempt."

At oral argument in this court, the law firm conceded that the contempt order is now moot as to it, see, generally, e.g., In re T. S., 829 A.2d 937, 940 (D.C.2003), but we proceed to the merits because appellant Loewinger individually is exposed to potential disciplinary action and reputational damages as a result of the order. See, generally, In re Evans, 450 A.2d 443 (D.C.1982). See also Marshall v. Whittaker Corp., 610 F.2d 1141, 1145 (3rd Cir.1979); In re Johnson, 251 Kan. 826, 840 P.2d 515 (1992); State v. Keenan, 307 Or. 515, 771 P.2d 244 (1989).

and thus a reasonable, if mistaken apprehension by themselves that Lanier Associates could properly sue for nonpayment—may be inferred by the adoption of Super. Ct. L & T R. 3–I(a) ("No owner or owner's agent may file a complaint for possession of real property based . . . on nonpayment of rent if the property is subject to a court-ordered receivership . . . unless authorized by court order in the receivership action.") after appellants' actions in the case. But, like Judge Kravitz, we do not read the rule or its adoption as implying any ambiguity in the statutory prohibition against delegation agreements between receiver and landlord *inter se*, without court authorization, of the kind at issue here (and this quite apart from the judge's additional finding that appellant's had disregarded terms of the delegation). As the same trial judge explained in a later case, *Knott v. Patten,* Case No. 06–LTB–3028 (Feb. 1, 2007), Rule 3–I was adopted by the Superior Court not because of a perception that existing law was "unclear" as to the receiver's exclusive role (absent court order) in enforcement of rent obligations, but because illegal pursuit of nonpayment actions by landlords "was going undetected in the receivership actions."

▮ Moreover, the proper response to a seemingly ambiguous court order is not to read it as one wishes: "If a party subject to court order claims not to understand its requirements, he or she may apply to the court for construction or modification. . . . To fail to take such steps is to act at one's peril as to what the court's ultimate interpretation of the order will be." *D.D. v. M. T.,* 550 A.2d 37, 44 (D.C.1988).

We conclude with Judge Kravitz that "it is inimical to the statutory scheme to suggest that a receiver, by private agreement, can transfer back to the landlord the authority to bring nonpayment actions when it was the landlord's failure to pay its utility bills that necessitated the appointment of a receiver in the first place." Because appellant's actions were in plain violation of the statute, and the receivership order (and, indeed, of the delegation agreement itself), the sanctions imposed by the Superior Court were proper.

*Affirmed.*

### APPENDIX

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

#### Civil Division—Landlord and Tenant Branch

LANIER ASSOCIATES, et al., Plaintiffs

v.

CLEMENT STOKES, Defendant

Case No. 05 LTB 21144

Judge Neal E. Kravitz

### *MEMORANDUM OPINION AND ORDER*

Lanier Associates, the plaintiff in this Landlord and Tenant action, is the owner of a 27–unit "master-metered" apartment building located at 1773 Lanier Place, N.W., in the District of Columbia. The defendant, Clement Stokes, is a tenant who occupies Apartment # 23 in the building under a written lease dated December 1, 1999. On November 13, 2001, a judge of this Court placed the building in receivership pursuant to the Prohibition of Electric and Gas Utility Service Termination to Master–Metered Apartment Building Act of 1980, D.C.Code § 42–3301 *et seq.* (2001), due to the landlord's failure to pay its gas bill. The question currently before the Court is whether Lanier Associates and its former attorneys, Kenneth J. Loewinger, Esquire and the law firm of Loewinger & Brand, PLLC, should be held in civil contempt of court and/or sanctioned under Rule 11 of the Superior Court Rules of Civil Procedure for prosecuting this action

in violation of the still-pending receivership order.

## I.

An apartment building is "master-metered" and thereby subject to the terms of the Prohibition of Electric and Gas Utility Service Termination to Master–Metered Apartment Building Act of 1980 if (i) it has three or more residential units, (ii) utility costs are included in the rents paid by the tenants of the building, and (iii) at least one utility company bills the landlord directly for services provided to the tenants. D.C.Code §§ 42–3301(1), –3302(a). Under the statute, a utility company may not terminate services to the tenants of a master-metered apartment building on account of the landlord's failure to pay its utility bills. D.C.Code § 42–3302(a). Instead, the company may petition the Superior Court for the appointment of a receiver to collect rents from the tenants. D.C.Code § 42–3303(a)(1). A receiver appointed under the statute is authorized "to take such action as it deems necessary to collect rents or payments for use and occupancy from the tenants ... in place of the owner, agent, lessor or manager." D.C.Code § 42–3303(a)(4). The receiver then pays the utility bills incurred after its appointment, deducts its own reasonable fees and costs, and passes along any remaining funds to the landlord. *Id.* The receivership is to be terminated when the Court finds that the landlord has satisfied the arrearage that was the subject of the utility company's original petition. D.C.Code § 42–3303(b). During the pendency of the receivership, any landlord or agent thereof who collects or attempts to collect rents from the tenants "shall be found, after due notice and hearing, to be in contempt of court." D.C.Code § 42–3303(d). *See generally Capitol Terrace, Inc. v. Shannon & Luchs, Inc.,* 564 A.2d 49, 50–51 (D.C.1989).

The receivership statute thus serves two legislative purposes. It protects tenants who live in master-metered apartment buildings from the loss of utility services due to the landlord's failure to pay its utility bills, and it protects utility companies from the loss of payment for services they are required by the statute to provide. *Shannon & Luchs Co. v. Jeter,* 469 A.2d 812, 813 (D.C.1983).

On November 13, 2001, the Superior Court (Diaz, J.) entered a written order in *Washington Gas Light Company v. Lanier Associates,* Civil Action No. 01–8264, granting the petition of Washington Gas Light Company to appoint a receiver for 1773 Lanier Place, N.W. Finding, after a hearing, that Lanier Associates had failed to pay $29,729.64 it owed the gas company for gas utility services provided to the tenants of the building, the Court appointed The Jason Corporation to serve as receiver of the tenants' rents and expressly forbade Lanier Associates to "collect any rents or payments for use and occupancy from the tenants of the apartment house ... so long as the receiver remains appointed." The Court directed The Jason Corporation to "take such action as it deems necessary to collect all rents or payments for use and occupancy forthcoming from the tenants of the apartment house," including "the power and right to institute, in the Landlord and Tenant Branch of the Superior Court, actions for possession of the premises for nonpayment of rent against any tenant who has not timely paid his rental obligations to the receiver." The Court directed that, in the event the receiver brought such a suit, Lanier Associates "shall be deemed to consent to be joined as a party-plaintiff and shall be subject to any claims, defenses, recoupments, set-offs or counterclaims of the tenant as [it] might have been had the action been initially instituted at [its] own

behest." Finally, the Court stated that the appointment of the receiver would remain in effect until the Court made a finding that Lanier Associates had satisfied the original delinquency alleged in the gas company's petition. No such finding has ever been made, and neither Judge Diaz nor any other judge of the Superior Court has ever vacated or modified the order entered on November 13, 2001.

Lanier Associates brought this Landlord and Tenant action on June 27, 2005. In a complaint prepared and filed on its behalf by Loewinger & Brand, PLLC, the landlord alleged that Mr. Stokes had failed to pay $45,000.00 in rent due under his lease between May 1, 2001 and June 30, 2005. Although, in light of the receivership order, Lanier Associates was precluded from collecting rent from Mr. Stokes for almost the entire period covered by the complaint, Lanier Associates alleged that the rent was "due to the landlord," and it stated that "the landlord asks the Court for" a judgment for possession and a money judgment "for rent, late fees, other fees and costs in the amount of $45,500.00." The complaint listed the "Jason Corp." as a co-plaintiff, but it did not identify the co-plaintiff as a court-appointed receiver or contain any signature line for a lawyer or other representative of the receiver.

The case was set for trial before the undersigned judge in the Landlord and Tenant Branch on May 2, 2006. When the case was called on the record, Omar Karram, Esquire, a junior associate at Loewinger & Brand, PLLC, was the only person who appeared. Explaining that the parties were working toward a possible settlement agreement, Mr. Karram made an oral request for a continuance of the trial.

The Court noticed that the complaint listed the "Jason Corp." as a second plaintiff along with Lanier Associates. Aware that The Jason Corporation sometimes serves as a court-ordered receiver for master-metered apartment buildings, the Court inquired whether the landlord's building was subject to a receivership order and, if so, whether the landlord was authorized to prosecute the action. Mr. Karram responded that the building was in receivership. Yet he, and then Mr. Loewinger, who appeared later in the day at the Court's request, both maintained that Lanier Associates had properly brought the action by listing the "Jason Corp." as a co-plaintiff. The lawyers conceded, however, that they had never discussed the case with the receiver or its counsel or even served the receiver with a copy of the complaint.

Because it appeared that Lanier Associates and its counsel had brought this action in violation of the receivership order in *Washington Gas Light Company v. Lanier Associates,* Civil Action No. 01–8264, the Court issued an order on May 5, 2006 directing Lanier Associates, Kenneth J. Loewinger, Esquire, and the law firm of Loewinger & Brand, PLLC to show cause why they should not be held in civil contempt of court and sanctioned under Rule 11 of the Superior Court Rules of Civil Procedure. The Court subsequently presided over a show-cause hearing on July 6–7, 2006 at which Lanier Associates, represented by newly retained counsel, and Mr. Loewinger and the firm of Loewinger & Brand, PLLC, each also represented by separate counsel, presented the testimony of six witnesses and other evidence in an effort to establish that they had prosecuted this case in accordance with the receivership order. All parties, as well as the receiver and *amicus curiae,* the Legal Aid Society of the District of Columbia, actively participated in the hearing and filed extensive pre-and post-hearing briefs on the pertinent issues. By the end of the

hearing, counsel for Lanier Associates and the receiver conceded that the case had been brought in violation of the receivership order and that the complaint was subject to dismissal. Loewinger and Brand, PLLC and Kenneth J. Loewinger, however, maintained their positions that they acted at all times with proper authority and in substantial compliance with the receivership order and governing law.

For the reasons set forth herein, the Court finds by clear and convincing evidence that Lanier Associates and its former lawyers have violated the clear and unambiguous directives of the receivership order by prosecuting this nonpayment action in the Landlord and Tenant Branch. As the Court also finds that neither Lanier Associates nor any of its former lawyers has established any cognizable defense to civil contempt, the Court concludes, in accordance with D.C.Code § 42–3302(d) and the common law standards for civil contempt, that Lanier Associates, Kenneth J. Loewinger, Esquire, and Loewinger & Brand, PLLC should be adjudicated in civil contempt of court. Pursuant to its contempt finding, the Court will dismiss the case without prejudice and will impose other remedial sanctions aimed at preventing further violations of this and other receivership orders and at compensating Mr. Stokes for the losses he has sustained as a result of the respondents' contumacious conduct. Although Lanier Associates and its former lawyers also are subject to non-monetary sanctions under Rule 11, the Court declines to impose any such sanctions at this time, as they would be duplicative of the sanctions to be imposed as civil contempt remedies.

## II.

Lanier Associates, Kenneth J. Loewinger, Esquire, and Loewinger & Brand, PLLC all argued in response to the show-cause order that Lanier Associates properly brought this action pursuant to a lawful delegation of the receiver's authority. Specifically, the respondents asserted that in May 2002 the receiver, acting through its then counsel, J. Andrew Chopivsky, authorized Lanier Associates to bring nonpayment actions through Lanier's counsel, Loewinger & Brand, PLLC, as long as the receiver was listed as a party plaintiff in all such actions. The respondents asserted that this delegation of authority was intended to ease the processing of nonpayment suits and to relieve the receiver of the obligation to pay its own counsel to prosecute them. The respondents asserted further that the delegation was a valid exercise of the receiver's authority, set forth in the receivership order, to "take such action as it deems necessary to collect all rents or payments for use and occupancy forthcoming from the tenants of the apartment house." The respondents contended that Lanier Associates never collected any rents from its tenants following the entry of the receivership order and that Lanier intended all along to turn over to the receiver any rents it received as a result of its prosecution of nonpayment actions. The respondents thus argued that The Jason Corporation's delegation of authority to Lanier Associates was fully consistent with the spirit of the receivership order and the holding of *Shannon & Luchs Co. v. Jeter*, 469 A.2d 812, 818 (D.C.1983), that a receiver who wishes to prosecute a nonpayment action must join the landlord as a party plaintiff.

The Court is not persuaded by any of these arguments. The receivership order in *Washington Gas Light Company v. Lanier Associates*, Civil Action No. 01–8264, does not permit The Jason Corporation to delegate to Lanier Associates the authority to institute nonpayment actions in the

Landlord and Tenant Branch, and the receiver's purported delegation of its authority was directly at odds with the terms and legislative purposes of the receivership statute. Moreover, even if a receiver were permitted to make the type of delegation of authority suggested by the respondents, the evidence at the show-cause hearing clearly established that Lanier Associates and its lawyers failed to abide by the terms of the purported delegation set by The Jason Corporation's lawyer.

### A.

The Court of Appeals made clear in *Jeter*, 469 A.2d at 815, that the prosecution of a Landlord and Tenant action based upon a tenant's nonpayment of rent constitutes an attempt to collect rent from the tenant. As the Court of Appeals explained, even if the action seeks only possession of the premises, as opposed to a money judgment for unpaid rent, the party bringing the action may end up collecting rent from the tenant because the tenant has the equitable right to redeem his tenancy by paying all back rents owed and otherwise squaring his account with the landlord. *Id.; see generally Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144, 146 (D.C.1947).

Therefore, when Judge Diaz entered the receivership order on November 13, 2001 prohibiting Lanier Associates from "collect[ing] any rents or payments for use and occupancy from the tenants of the apartment house . . . so long as the receiver remains appointed," he necessarily prohibited Lanier Associates from prosecuting actions in the Landlord and Tenant Branch based upon nonpayment of rent. To make this proscription even more clear, Judge Diaz expressly gave The Jason Corporation "the power and right to institute, in the Landlord and Tenant Branch of the Superior Court, actions for possession of the premises for nonpayment of rent against any tenant who has not timely paid his rental obligations to the receiver" and directed that "[i]n such event" Lanier Associates "shall be deemed to consent to be joined as a party-plaintiff."

The receivership statute is equally unequivocal in establishing that the appointment of a receiver divests the landlord of its ability to sue tenants for nonpayment of rent. The statute expressly provides that a court-appointed receiver shall have the authority "to take such action as it deems necessary to collect all rents or payments for use and occupancy from the tenants of the apartment house in question *in place of the owner, agent, lessor or manager.*" D.C.Code § 42–3303(a)(4) (emphasis added). Given the Court of Appeals' determination in *Jeter, supra*, that the prosecution of a nonpayment action is an attempt to collect rent, this provision of the statute must be understood to mean that the receiver has the authority *in place of the landlord* to initiate an action based upon a tenant's nonpayment of rent. The statute reinforces this interpretation by providing that "[a]ny owner, agent, lessor or manager who collects or attempts to collect any rent or payment for use and occupancy from any tenant of an apartment house subject to an order appointing a receiver pursuant to this section shall be found, after due notice and hearing, to be in contempt of court." D.C.Code § 42–3303(d).

The Court concludes, accordingly, that the position advanced here by the respondents—that the receiver could delegate to the landlord the authority to bring nonpayment actions—is contrary both to the receivership order in this case and to the statute pursuant to which the order was entered. For the following reasons, the Court also concludes that the respondents' position is at odds with the legislative pur-

poses underlying the receivership statute and with the orderly and fair administration of justice.

First, a system that allowed the owner of a master-metered apartment building subject to a receivership order to bring nonpayment actions could create significant confusion among the tenants of the building. The tenants are told upon the entry of the receivership order that they are to pay their rent to the receiver instead of the landlord. Yet upon their receipt of a nonpayment action alleging a failure to pay rent "due to the landlord" and, as here, seeking a judgment in favor of the landlord, many tenants—the great majority of whom have no access to counsel—would likely conclude that the way to avoid eviction is to pay the landlord the amount owed. Such an arrangement easily could enable an unscrupulous landlord to keep for itself rents that are required by court order to go to the receiver and could thereby frustrate the utility company's efforts to obtain payment for services the receivership statute requires it to provide. This is no small concern, as the Court's official statistics for each of the past several years show that approximately half of the more than 40,000 nonpayment actions brought each year in the Landlord and Tenant Branch are dismissed by the landlord on or before the initial hearing date, often because the tenant, after learning of the suit, has paid the rent alleged to be due and owing.

Second, the positions and interests of the landlord and the receiver are inherently in conflict. As the Court of Appeals noted in *Capitol Terrace, Inc. v. Shannon & Luchs, Inc.*, 564 A.2d 49, 53 (D.C.1989), "the potential for hostility by the landlord toward the receiver is apparent; unhappy at being ousted from management of its property to begin with, the landlord may easily grow to believe that the receiver is indifferent to its interests and concerned only with collecting enough rents to pay the utility bills and its own fees and expenses." Given these built-in tensions, a private agreement between the receiver and the landlord cannot be expected reliably to provide the protection for utility companies and tenants that is the goal of the receivership statute and the receivership orders entered pursuant thereto.

Finally, it is inimical to the statutory scheme to suggest that a receiver, by private agreement, can transfer back to the landlord the authority to bring nonpayment actions when it was the landlord's failure to pay its utility bills that necessitated the appointment of a receiver in the first place. The Court of Appeals has described the circumstances that result in the appointment of a receiver for a master-metered apartment building as "extraordinary" and "exceptional," *see Capitol Terrace, Inc.*, 564 A.2d at 50, 53 n. 6, and this Court can see no legitimate reason why the receivership statute should be interpreted so as to permit an extrajudicial delegation of authority that could result in rent money going into the hands of the landlord, the very party that has proved itself not up to the task of paying the bills for vital utility services for its tenants.

**B.**

With regard to the question of whether Lanier Associates and its former lawyers acted in accordance with The Jason Corporation's purported delegation of authority, the Court makes the following findings of fact, based upon its consideration of the credibility of the witnesses who testified at the show-cause hearing on July 6–7, 2006 and its review of the pertinent documents and other evidence in the record:

1. In May 2002, approximately six months after the entry of the receiver-

ship order, J. Andrew Chopivsky spoke with Barbara Rice, Esquire in the hallway of the courthouse concerning the prosecution of nonpayment actions in the Landlord and Tenant Branch against tenants of 1773 Lanier Place, N.W. At the time, Mr. Chopivsky was counsel for The Jason Corporation in the receivership action, and Ms. Rice, an associate at the law firm of Loewinger & Brand, PLLC, was working under the direction of Kenneth J. Loewinger, Esquire as counsel for Lanier Associates. The firm represented Lanier Associates in a large number of related matters concerning landlord-tenant relations at 1773 Lanier Place, N.W., including the receivership action, a tenants' petition filed on November 5, 2001 with the District of Columbia Department of Consumer and Regulatory Affairs by a tenants' association whose members included approximately twenty tenants of the building (but not Mr. Stokes), and seventeen Landlord and Tenant actions brought against individual members of the tenants' association in September 2001, two months before the filing of the tenants' petition and the entry of the receivership order. *See* Landlord and Tenant Nos. 01–38418 through 01–38434. With the concurrence of Patricia Williams, the director of receivership administration at The Jason Corporation, who was present during the conversation in the hallway of the courthouse, Mr. Chopivsky and Ms. Rice agreed that Lanier Associates would be permitted to prepare and file nonpayment actions against tenants of 1773 Lanier Place, N.W., but only so long as the complaints listed The Jason Corporation as the receiver and had a signature line for Mr. Chopivsky, and only so long as Lanier Associates or its counsel kept The Jason Corporation apprised of the progress of all such cases. The lawyers did not ask Judge Diaz to modify the receivership order, nor did they inform the Court, the gas company, or any of the tenants of 1773 Lanier Place, N.W. of their informal agreement.

2. Nearly three years passed following the May 2002 agreement without the filing of any new nonpayment actions against tenants of 1773 Lanier Place, N.W. During this time, Loewinger & Brand, PLLC was engaged on behalf of Lanier Associates in extensive administrative proceedings over the tenants' petition, while the seventeen Landlord and Tenant actions that had been filed prior to the entry of the receivership order were consolidated and stayed pending the outcome of the administrative proceedings, *see Drayton v. Poretsky Management, Inc.,* 462 A.2d 1115 (D.C.1983). On February 19, 2004, the Court of Appeals disbarred Mr. Chopivsky by consent. *In the Matter of J. Andrew Chopivsky,* 843 A.2d 737 (D.C.2004).

3. On April 18, 2005, Loewinger & Brand, PLLC, through Ms. Rice, filed nonpayment actions in the Landlord and Tenant Branch on behalf of Lanier Associates against Mr. Stokes and Diana Prieto, the tenant in Apartment # 16 at 1773 Lanier Place, N.W. *See* Landlord and Tenant Nos. 05–12542 (Prieto) and 05–12543 (Stokes). The complaints were brought in the names of "Lanier Associates & Jason Corp," and they alleged that each tenant had failed to pay $43,200.00 in rent due and owing "to the landlord" from May 1, 2001 through April 30, 2005. (Documentary evidence in the record of the case before this Court suggests that Mr. Stokes and Ms. Prieto had been paying their rent into a private escrow account as part of a rent strike initiated by the tenants' association in mid–2001.) On behalf of "the landlord," each complaint sought a judg-

ment for possession and a money judgment "for rent, late fees, other fees and costs in the amount of $43,680.00." Neither complaint identified The Jason Corporation as a court-ordered receiver or contained a signature line for its counsel. Ms. Rice signed the complaints for Loewinger & Brand, PLLC as "Plaintiff's/Landlord's Attorney."

4. Ms. Rice, who testified at the show-cause hearing that she was unaware of Mr. Chopivsky's disbarment, filed the two nonpayment cases on April 18, 2005 without first making any effort to confirm with Mr. Chopivsky or any other representative of The Jason Corporation that the oral agreement reached back in May 2002 remained in effect. Ms. Rice obtained the information about the extent of the defendants' alleged nonpayment of rent in a telephone conversation with Dr. Laurence Drell, the owner of Lanier Associates, who personally authorized the filing of the suits. Ms. Rice did not serve a copy of either complaint on Mr. Chopivsky or The Jason Corporation, and Ms. Williams, the director of receivership administration at The Jason Corporation, did not even know that any nonpayment cases had been filed until after the Court issued its show-cause order more than a year later, on May 5, 2006.

5. The official dockets of Landlord and Tenant Nos. 05–12542 (Prieto) and 05–12543 (Stokes), of which the Court takes judicial notice, indicate that the Clerk dismissed both cases for want of prosecution on the initial return date, May 20, 2005.

6. Loewinger & Brand, PLLC filed new nonpayment suits for Lanier Associates against Mr. Stokes and Ms. Prieto on June 27, 2005. *See* Landlord and Tenant Nos. 05–21144 (Stokes) and 05–21145 (Prieto). The complaints, signed by Mr. Karram, a junior associate at Loewinger & Brand, PLLC, as "Plaintiff's/Landlord's Attorney," were identical to those filed on April 18, 2005 and dismissed on May 20, 2005, except that they alleged an additional two months of unpaid rent and sought money judgments in the amount of $45,500.00.

7. As with its filings two months earlier, Loewinger & Brand, PLLC filed the complaints on June 27, 2005 without first contacting The Jason Corporation to confirm that the delegation of authority agreed to by Ms. Rice and Mr. Chopivsky back in May 2002 remained in effect. The firm again failed to serve copies of the complaints on The Jason Corporation, and Ms. Williams again was unaware of the existence of the cases until after she received a copy of this Court's May 5, 2006 show-cause order.

Landlord and Tenant No. 05–21144, the action against Mr. Stokes filed on June 27, 2005, is the case currently before this Court. Until new counsel entered an appearance on behalf of Lanier Associates shortly before the show-cause hearing, the case had been prosecuted throughout by the law firm of Loewinger & Brand, PLLC.

Landlord and Tenant No. 05–21145, the action against Ms. Prieto filed on June 27, 2005, is set for a bench trial in the Landlord and Tenant Branch on September 14, 2006. On July 17, 2006, ten days after the show-cause hearing in the case against Mr. Stokes, Lanier Associates filed a motion, signed by Mr. Loewinger, to dismiss the case against Ms. Prieto as having been filed without a proper appearance by The Jason Corporation. The motion to dismiss the case against Ms. Prieto is set for a hearing in the Landlord and Tenant Branch on July 28, 2006.

### C.

■ The evidence presented at the show-cause hearing thus clearly establishes that The Jason Corporation intended to make a very limited delegation of its authority to initiate nonpayment actions in the Landlord and Tenant Branch and that Lanier Associates, acting through its former counsel, Loewinger & Brand, PLLC, vastly exceeded the parameters of the purported delegation of authority set by the receiver. Ms. Williams testified that she agreed to the delegation of authority on the express conditions that every complaint filed by Loewinger & Brand, PLLC would identify The Jason Corporation as the court-appointed receiver, that the complaints would be co-signed by Mr. Chopivsky, and that Loewinger & Brand, PLLC or Lanier Associates would keep The Jason Corporation fully apprised of the progress of the cases. The terms of the agreement, as testified to by Ms. Williams, are largely corroborated by a letter from Mr. Chopivsky to Ms. Rice dated May 14, 2002. In the letter, appended as Exhibit 5 to the response of Loewinger & Brand, PLLC and Mr. Loewinger to the show-cause order, Mr. Chopivsky told Ms. Rice to "add The Jason Corporation as a co-plaintiff and [to] add a signature line for me. Make sure you note Jason as 'receiver' rather than 'landlord.'" Yet Lanier Associates and Loewinger & Brand, PLLC brought the two sets of nonpayment cases against Mr. Stokes and Ms. Prieto without identifying The Jason Corporation as the court-ordered receiver, without including signature lines on the complaints for counsel for The Jason Corporation, and without keeping The Jason Corporation apprised of the progress of the cases or even notifying the receiver that the cases had been brought.

■ Indeed, the manner in which Lanier Associates and Loewinger & Brand, PLLC brought the four nonpayment cases violated not only the terms of the receiver's limited delegation of authority but also the requirements of Rule 9(b) of the Superior Court Rules of Civil Procedure for the Landlord and Tenant Branch. Rule 9(b) provides, in relevant part, that "[n]o corporation shall appear as a plaintiff in this Branch except through a member in good standing of the Bar of this Court." Until the show-cause hearing earlier this month, however, no lawyer ever entered an appearance on behalf of The Jason Corporation in any of the nonpayment cases brought by Loewinger & Brand, PLLC in the names of Lanier Associates and The Jason Corporation. Under the terms of Rule 9(b), therefore, the receiver never made a proper appearance in any of these cases, and Lanier Associates, acting through Loewinger & Brand, PLLC, thus prosecuted the actions on its own, in direct violation of the letter and intent of the receivership order.

The Court concludes, accordingly, that even if the receivership order could be interpreted to permit The Jason Corporation to delegate to Lanier Associates the authority to institute nonpayment actions in the Landlord and Tenant Branch—a proposition the Court rejects, as a matter of law—the evidence establishes that Lanier Associates and Loewinger & Brand, PLLC went far beyond the limits of the delegation agreed to by The Jason Corporation and prosecuted this action on its own, without any lawful authority.

### III.

#### A.

■ Unlike criminal contempt, which is intended to punish the contemnor and to vindicate the authority of the court, civil contempt is a sanction that is "designed to enforce compliance with an order

of the court and to compensate the aggrieved party for any loss or damage sustained as a result of the contemnor's noncompliance." *D.D. v. M.T.*, 550 A.2d 37, 43–44 (D.C.1988). To support a finding of civil contempt, a complainant must prove that the alleged contemnor (i) was subject to the terms of a court order and (ii) violated the order. *Id.* A court order must be "clear and unambiguous" to form the basis of a civil contempt finding, *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir.1991), although one who elects to follow his own interpretation of a court order and to ignore available means of obtaining judicial clarification may be found to have acted at his own peril. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *see also D.D. v. M.T.*, 550 A.2d at 44. Because "drastic" sanctions, up to and including conditional imprisonment and substantial fines, may be imposed upon a finding of civil contempt, proof of the alleged contemnor's violation of a court order must be made by clear and convincing evidence. *D.D. v. M.T.*, 550 A.2d at 44.

The intent of a person who has violated the terms of a court order is "immaterial" to a civil contempt proceeding, and a showing of good faith is "of no avail." *Id.* This is so because "civil contempt is remedial and designed to ensure the enjoyment by the aggrieved party of that to which that party is entitled … [and because] it is of no consolation to an individual denied rights secured by a court order that [the violation] was done in good faith or upon the advice of counsel." *Id.* at 47.

The law thus recognizes only two defenses in civil contempt proceedings: substantial compliance with the court order and an inability to do that which the court commanded. *Id.* at 44. With regard to the defense of substantial compliance, advanced here by Loewinger & Brand,

PLLC, the Court of Appeals has made clear on several occasions that the defense is a narrow one:

> Courts have a right to demand, and do insist upon, full and unstinting compliance with their commands. One who is subject to a court order has the obligation to obey it honestly and fairly, and to take all necessary steps to render it effective. … [H]e or she must be diligent and energetic in carrying out the orders of the court, and a token effort to comply will not do.

*District of Columbia v. Jerry M.*, 571 A.2d 178, 190 n. 28 (D.C.1990); *accord Link v. District of Columbia*, 650 A.2d 929, 932 (D.C.1994); *D.D. v. M.T.*, 550 A.2d at 44.

Finally, with respect to the pertinent law governing civil contempt, a court order directed to a lawyer's client is generally binding upon the lawyer as long as the lawyer has notice of the order. Restatement (Third) of the Law Governing Lawyers § 105, comment (d) (2000). A lawyer, therefore, may be adjudicated in civil contempt of court for his own actions in assisting a client to violate a clear and unambiguous court order directed at the client. *Id.* at § 94, comment (d). In this regard, the federal courts of appeals have held consistently that a lawyer is subject to a finding of civil contempt if, on behalf of a client, the lawyer prosecutes a lawsuit that is barred by a pending court order. For example, in *Carter v. Van Buskirk*, 691 F.2d 390, 391–92 (8th Cir.1982), the United States Court of Appeals for the Eighth Circuit upheld a trial court's order finding a lawyer in civil contempt of court for prosecuting an eviction action on behalf of his client, a landlord, in violation of a restraining order that had been entered pursuant to the automatic stay provision of the federal bankruptcy code. *See also Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 58 (2d Cir.

1976). The Eighth Circuit's decision in *Carter* is fully consistent with the statement of our local Court of Appeals in *D.D. v. M.T.*, 550 A.2d at 50, that "[e]ven a stranger can be held in contempt for violation of a court order if he or she has notice of it and acts in concert or privity with the party against whom the order is directed." Indeed, the civil contempt provision of the receivership statute, D.C.Code § 42–3303(d) (emphasis added), itself provides that *"[a]ny . . . agent"* of a landlord who collects or attempts to collect rent in violation of an order appointing a receiver for a master-metered apartment building shall be subject to a finding of contempt.

### B.

The undisputed evidence presented at the show-cause hearing on July 6–7, 2006 establishes that Lanier Associates has repeatedly violated Judge Diaz' clear and unambiguous order, entered in the receivership case on November 13, 2001, that Lanier Associates not prosecute nonpayment actions in the Landlord and Tenant Branch against tenants of 1773 Lanier Place, N.W. except as a co-plaintiff in actions instituted by the receiver. Without properly joining The Jason Corporation as a party plaintiff, or even notifying the receiver of the lawsuits it was prosecuting, Lanier Associates has brought four separate nonpayment actions, including this one, against tenants of the building. Even Lanier Associates, through its new counsel, conceded on the record near the conclusion of the show-cause hearing that it brought the actions improperly and without lawful authority. The Court accordingly finds, by clear and convincing evidence, that Lanier Associates attempted to collect rent in violation of the receivership order by prosecuting this nonpayment action against Mr. Stokes.

The evidence is equally clear and convincing with regard to the law firm of Loewinger & Brand, PLLC. At every step along the way—from Ms. Rice's request of Mr. Chopivsky in May 2002 that the receiver delegate its authority to bring nonpayment actions, to Ms. Rice's and Mr. Karram's subsequent failures to identify The Jason Corporation as the receiver and to include signature lines for the receiver's counsel on the complaints they filed, to their utter disregard for the firm's agreement to keep the receiver apprised of the progress of the actions—lawyers from Loewinger & Brand, PLLC were intimately involved in and directive of the contumacious conduct of their client.

The firm's argument that it nevertheless substantially complied with the terms of the receivership order is not supported by the record. The firm states, in this regard, that Lanier Associates intended to turn over to the receiver any rents it recovered through the prosecution of the nonpayment cases and that neither the firm nor Lanier Associates ever tried to hide from the Court or from the tenants of 1773 Lanier Place, N.W. that a court-ordered receiver was in place. The record does establish that the firm sent letters to the tenants of the building in February 2002 advising them of the receivership order and directing them to pay their rent to the receiver rather than to Lanier Associates, and it is undisputed that the firm wrote "Jason Corp." beneath the landlord's name on the complaints it filed. The fact remains, however, that despite its admitted knowledge of the receivership order, Loewinger & Brand, PLLC repeatedly filed and prosecuted nonpayment actions without any involvement of the receiver, in a manner directly inconsistent with one of the most, if not the most, essential provisions of the receivership order. There was nothing "full" or "unstinting" or "diligent"

or "energetic" about the firm's efforts to comply with the terms of the receivership order. To the contrary, the steps cited by the firm as substantial compliance are precisely the type of "token effort[s] to comply [that] will not do." *District of Columbia v. Jerry M.*, 571 A.2d at 190 n. 28.

Loewinger & Brand, PLLC asserts in the alternative that it cannot properly be held in civil contempt in this Landlord and Tenant Branch action for the violation of a receivership order that was issued in a case pending in the Civil Division. While it is true that ordinarily "a civil contempt proceeding is a part of the original cause," *D.D. v. M.T.*, 550 A.2d at 44, the firm's argument is foreclosed by the well-established rule that "there is no jurisdictional bar to one division [or branch] of the Superior Court entertaining an action more appropriately considered in another division [or branch], so long as doing so does not violate the statute or rules of the court and the claim has a rational nexus to a subject matter within the responsibility of that division [or branch]." *Brandenburger & Davis v. Estate of Lewis*, 771 A.2d 984, 990 (D.C.2001) (quoting *Clay v. Faison*, 583 A.2d 1388, 1390 (D.C.1990)); *accord Robinson v. United States*, 769 A.2d 747, 751 (D.C. 2001); *Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 425–26 (D.C.1984); *Andrade v. Jackson*, 401 A.2d 990, 992–93 (D.C.1979). Here, there is an undeniable nexus between the enforcement of the receivership order, entered in the Civil Division, and the litigation of this nonpayment action, in the Landlord and Tenant Branch. Moreover, no statute or court rule prohibits the Landlord and Tenant Branch—which, after all, is a part of the Civil Division—from presiding over civil contempt proceedings that arise from the violation of a Civil Division receivership order that is perpetrated through the prosecution of an action

in the Landlord and Tenant Branch. Finally, the undersigned judge has been assigned to the Civil Division throughout the pendency of these contempt proceedings, and he has provided all parties to the receivership action, including the receiver, a full opportunity to participate in the contempt proceedings through the presentation of evidence and written and oral arguments.

Loewinger & Brand, PLLC also suggests that it and Lanier Associates are entitled to the same quasi-judicial immunity that the case law affords The Jason Corporation in its role as receiver. This suggestion is similarly without merit. In *Capitol Terrace, Inc.*, 564 A.2d at 52, the Court of Appeals held that a receiver was entitled to quasi-judicial immunity for its actions performed in furtherance of the receivership order because, "[i]n appointing a receiver after finding that this extraordinary step is necessary, the trial judge assuredly performs a judicial act," and because, "in collecting rents under the terms of its appointment, the receiver is performing ministerial functions at the direction of the judge in furtherance of that act." However, the mere fact that The Jason Corporation was itself entitled to quasi-judicial immunity for some of its actions as receiver did not transform its unlawful delegation of the authority to bring nonpayment actions into a "judicial act," nor can it be seriously argued, given the terms of the receivership order and the analysis herein, that Lanier Associates and Loewinger & Brand, PLLC were acting "at the direction of the judge" in prosecuting this nonpayment action without the involvement of the receiver.

The Court accordingly finds, by clear and convincing evidence, that Loewinger & Brand, PLLC was subject to the receivership order and that the firm violated the order by assisting its client, Lanier Associ-

ates, in attempting to collect rent through the prosecution of this action in a manner directly contrary to the essential terms of the receivership order.

 The extent of Mr. Loewinger's personal involvement in the prosecution of this action is less readily apparent. Mr. Loewinger did not sign the complaint, and with the exception of his brief appearance at the hearing on May 2, 2006, to which he was summoned when Mr. Karram was unable to answer the Court's questions about the receivership order, he did not appear in court in this case on behalf of Lanier Associates. More generally, Mr. Loewinger testified at the show-cause hearing that he did not participate in the May 2002 discussions between Ms. Rice and Mr. Chopivsky concerning the delegation of the receiver's authority to institute nonpayment actions and that he had no involvement in the day-to-day litigation of this or any of the other Landlord and Tenant actions prosecuted by Loewinger & Brand, PLLC on behalf of Lanier Associates.

Loewinger & Brand, PLLC presented the testimony of Omar Karram and Karly Jordan at the show-cause hearing in an effort to corroborate Mr. Loewinger's testimony. The evidence showed that Mr. Karram is the (now former) junior associate at Loewinger & Brand, PLLC to whom Mr. Loewinger gave the assignment of prosecuting the second set of nonpayment actions against Mr. Stokes and Ms. Prieto, filed on June 27, 2005. Ms. Jordan is a paralegal at Loewinger & Brand, PLLC (still employed) who prepared the complaints for all of the Landlord and Tenant actions the firm has filed against tenants of 1773 Lanier Place, N.W. dating back to 2001. Mr. Karram testified that he never spoke with Mr. Loewinger about the nonpayment actions against Mr. Stokes and Ms. Prieto. Ms. Jordan testified that the only communications she ever had with Mr. Loewinger about the nonpayment cases against Mr. Stokes and Ms. Prieto were contained in three back-and-forth electronic mail messages on September 29, 2005 and October 11, 2005 in which Mr. Loewinger asked her to prepare notices to quit for the defendants (for repeated late payment of rent), she responded with a request for clarification, and he subsequently told her not to send the notices out for service.

The Court received starkly different testimony from Barbara Rice concerning the level of Mr. Loewinger's involvement. Ms. Rice, who left Loewinger & Brand, PLLC in the spring of 2006 after eight years as an associate at the firm, testified that she worked under Mr. Loewinger's direction and supervision on all of the various matters the firm handled for Lanier Associates. Ms. Rice testified that this arrangement began in the fall of 2001, when the tenants' petition and the receivership case were initiated, and extended through the spring of 2005, when the first nonpayment actions against Mr. Stokes and Ms. Prieto were dismissed for want of prosecution. According to Ms. Rice, Mr. Loewinger was actively engaged throughout this several-year period in the firm's efforts to negotiate a global settlement of the tenants' petition and of the Landlord and Tenant actions that had been pending and stayed since 2001. Ms. Rice testified that at Mr. Loewinger's request she kept him regularly updated, on an approximately monthly basis, on the administrative litigation over the tenants' petition and on the status of all of the Landlord and Tenant actions the firm was prosecuting against tenants of 1773 Lanier Place, N.W. Finally, Ms. Rice testified that on at least one occasion after June 2005 she overheard Mr. Loewinger ask Mr. Karram in the hallway of the firm's offices whether Mr. Karram had joined The Jason Corporation in the sec-

ond set of nonpayment actions filed against Mr. Stokes and Ms. Prieto.

For several reasons, the Court finds the testimony of Ms. Rice concerning the extent of Mr. Loewinger's involvement in the prosecution of the nonpayment cases more credible than the testimony of Mr. Loewinger, Mr. Karram, and Ms. Jordan.

First, documentary evidence now before the Court directly contradicts Mr. Loewinger's testimony that he had no involvement in the day-to-day litigation of this action. When Ms. Jordan completed her testimony on direct examination concerning her brief email exchange with Mr. Loewinger about notices to quit, the Court asked Ms. Jordan whether the three emails she had described really were her only communications with Mr. Loewinger related to this case. Ms. Jordan conceded that there was at least one additional email, still on her office computer, that the firm had not asked her to bring to the courthouse for the show-cause hearing. The Court directed Ms. Jordan to retrieve the email from her computer, and when Ms. Jordan returned to the witness stand, she presented an email that Mr. Loewinger sent to her at 7:30 p.m. on June 20, 2005. This email, admitted in evidence as Plaintiff's Exhibit 3, has as its subject line "drell" (the name of the owner of Lanier Associates) and states the following, in its entirety (and with its typographical errors left undisturbed): "didnt we file a ferw new l & t's? If so, need to add jason corp as receiver. talk in am."

This email makes clear that exactly one week before Loewinger & Brand, PLLC filed the second set of nonpayment actions against Mr. Stokes and Ms. Prieto, Mr. Loewinger told the paralegal in charge of drafting the complaints that he wished to speak with her about the joinder of The Jason Corporation in the lawsuits. Although there is no way to know with absolute certainty that Mr. Loewinger followed up with Ms. Jordan before the complaints were filed, the Court finds it highly unlikely that Mr. Loewinger, the lead principal in the firm and the person with overall responsibility for the firm's legal work on behalf of Lanier Associates, had no subsequent involvement in the fashioning of the complaints against Mr. Stokes and Ms. Prieto.

The email message of June 20, 2005 is not the only piece of documentary evidence that ties Mr. Loewinger to the litigation of this case. During Mr. Karram's testimony at the show-cause hearing, the Court asked Mr. Karram why Mr. Loewinger was listed as lead counsel in the signature block of a motion to lift a *Drayton* stay that Mr. Karram signed and filed in this case on September 7, 2005. Mr. Karram responded that he listed Mr. Loewinger as lead counsel on the motion because Mr. Loewinger edited the motion before it was filed. When asked whether this was consistent with his previous testimony that he had never discussed the case with Mr. Loewinger, Mr. Karram paused and then testified that, without leaving a note or having any type of communication with Mr. Loewinger, he had left a draft of the motion in Mr. Loewinger's box and that Mr. Loewinger, again without any communication of any kind between the two of them, had marked several editing changes for Mr. Karram to make. Even if one were to credit this curious testimony concerning Mr. Loewinger's editing of the motion, the testimony is strongly supportive of the view that Mr. Loewinger was personally involved in the firm's preparation of the only complex motion litigated in the case. (Mr. Loewinger, for his part, testified that he had no recollection of editing the motion.)

Second, in addition to the problematic sworn testimony that Mr. Loewinger and

Mr. Karram provided at the show-cause hearing, both have made several unsworn statements on the record in the course of this litigation that have given the Court additional reasons to be concerned about their credibility as witnesses. For example, at the hearing in the Landlord and Tenant Branch on May 2, 2006, an official transcript of which is in the record, Mr. Karram told the Court that the judge in the receivership case "informed us that we were not in violation of the receivership order, that we were able to bring suit against the tenant"; that "the receiver has been involved in this suit" and "is aware of our actions and our attempts to try to settle this case"; that Mr. Loewinger and Ms. Rice "both spoke to the attorney at Jason Corp prior to us filing the suit"; and that Loewinger & Brand, PLLC "did have prior to filing the suit consent from the Jason Corp." At the same hearing on May 2, 2006, Mr. Loewinger stated on the record that he had personally "directed" Mr. Karram and Ms. Rice "to contact Jason and advise them and get their consent" to bring this particular nonpayment case; that "we've contacted Jason Corp. on several occasions"; and that "this is a case where the defendant is represented" by counsel with whom Loewinger & Brand, PLLC was in "active" settlement negotiations.

The evidence presented at the show-cause hearing on July 6–7, 2006 established that all of these statements by Mr. Karram and Mr. Loewinger were inaccurate. Specifically, the evidence established that no judge in the receivership case ever authorized Lanier Associates to bring nonpayment actions without the receiver; that the receiver was not involved in, and did not even know about, this case; that neither Mr. Loewinger nor Ms. Rice had any contact with an attorney representing The Jason Corporation about the filing of this

particular action; that Mr. Loewinger never directed either Mr. Karram or Ms. Rice to contact The Jason Corporation and get its consent to bring this case; and that Mr. Stokes, who was not present at the hearing on May 2, 2006, was not and had never been represented by counsel in this case.

In the final analysis, the evidence establishes that Mr. Loewinger was personally involved in the fashioning of the complaint, in the preparation of the most complex motion in the case, in the decision not to prepare for the filing of a separate breach of lease case against Mr. Stokes through the service of a notice to quit alleging consistent late payment of rent, and in the efforts to negotiate a global settlement agreement with the tenants' association. All of this evidence is fully supportive of Ms. Rice's testimony that Mr. Loewinger entrusted most of the day-to-day details of the litigation to his associates while maintaining overall control of the direction of the litigation and inserting himself into the decision making process at all critical stages of the case. It also is fully consistent with Mr. Karram's repeated statements on the record at the hearing on May 2, 2006 that he needed to consult with Mr. Loewinger before he would be in a position to explain to the Court the basis of Lanier Associates' authority to bring the action and Mr. Loewinger's statement on the record, upon his arrival in the courtroom shortly thereafter, that "I represent Lanier along with Mr. Karram."

For all of these reasons, the Court finds, by clear and convincing evidence, that Kenneth J. Loewinger, Esquire was personally involved in the direction and supervision of all of the Landlord and Tenant actions brought by Loewinger & Brand, PLLC against tenants of 1773 Lanier Place, N.W. and, in particular, in the firm's decision to file and prosecute this nonpayment action against Mr. Stokes. The

Court therefore finds, by clear and convincing evidence, that Mr. Loewinger assisted Lanier Associates in attempting to collect rent from Mr. Stokes through the prosecution of this action in a manner prohibited by the receivership order.

### C.

As indicated above, the receivership statute provides that "[a]ny owner, agent, lessor or manager who collects or attempts to collect any rent or payment for use and occupancy from any tenant of an apartment house subject to an order appointing a receiver pursuant to this section shall be found, after due notice and hearing, to be in contempt of court." D.C.Code § 42–3303(d). The defendant contends that the legislature's use of the mandatory term "shall" removes all of the Court's discretion and requires that any party or other person or entity found by clear and convincing evidence to have collected or attempted to collect rent in violation of the receivership order be held in civil contempt of court. The defendant thus argues that the Court's findings require an adjudication of civil contempt as to Lanier Associates, Kenneth J. Loewinger, Esquire, and Loewinger & Brand, PLLC.

The Court is not persuaded that its findings render it entirely without discretion to determine whether an adjudication of civil contempt is appropriate in light of the totality of the circumstances. At its essence, an adjudication of civil contempt is a determination by a court, not a legislature, that a previous court order has been violated and that remedial sanctions are necessary to enforce compliance with the previous court order or to compensate any persons who have suffered losses as a result of the violation.

The Court nevertheless concludes, in its discretion, that all three respondents should be adjudicated in civil contempt of court. First, although the legislature's use of the word "shall" in D.C.Code § 42–3303(d) may not make an adjudication of contempt mandatory, the language of the statute evinces a strong legislative preference that any party or other entity found, after due notice and hearing, to have collected or attempted to collect rent in violation of a receivership order entered pursuant to the statute be held in contempt of court. The Court thinks that it should give great, even if not necessarily determinative, weight to this clear statement of the legislature's intent.

Second, while the record might not support a finding beyond a reasonable doubt that the respondents acted with the willful and malicious intent necessary for a finding of criminal contempt, cf. D.C.Code § 42–3304 (providing that "[a]ny willful or malicious violation of this chapter by any owner, agent, lessor, [or] manager … shall be punishable by a fine of not more than $500 or imprisonment for not more than 30 days, or both"), the evidence shows that Mr. Loewinger and the lawyers of his firm have known all along that the receivership order prohibited Lanier Associates from prosecuting nonpayment actions against tenants of 1773 Lanier Place, N.W. except as a co-plaintiff in actions instituted by the receiver. On May 23, 2002, Ms. Rice filed a motion to join The Jason Corporation as a party in the seventeen consolidated nonpayment actions that had been pending since before the appointment of The Jason Corporation as receiver for the building. Writing that "only a receiver may collect rents from and file suits for possession for a property under receivership," Ms. Rice argued that under the Court of Appeals' decision in *Jeter* The Jason Corporation "is an indispensable party to the suits." Similarly, at the hearing in this case on May 2, 2006, Mr. Loewinger—the author of a treatise on landlord

and tenant law in the District of Columbia and the "lead principal" of Loewinger & Brand, PLLC, described on the firm's public website, http://www.loewinger-brand. net, as "the pre-eminent firm in the practice of both commercial and residential landlord and tenant law in the District of Columbia"—stated in response to a question from the Court about the governing case law that "*Jeter versus Shannon & Luchs* says that both the landlord and the receiver are necessary parties; [that] is what I believe the case stands for."

Given all of this evidence, it simply is not credible to suggest that the respondents, and in particular Mr. Loewinger, believed that the receiver's delegation of authority to Lanier Associates to bring nonpayment actions was permitted by the receivership order. But even if the respondents did hold this belief, and held it innocently, there is much more here to establish the respondents' disregard for the receivership order. For as discussed above, the evidence clearly establishes that the respondents ignored the most essential terms of the agreement reached with The Jason Corporation in May 2002 and prosecuted this action without any involvement by the receiver.

Third, as set forth in this opinion, the respondents have advanced largely frivolous arguments in response to the Court's show-cause order, and the lawyers and other employees of Loewinger & Brand, PLLC—and Mr. Loewinger and Mr. Karram in particular—have made repeated statements on the record that have been proven to be inaccurate. None of this conduct gives the Court any confidence that any of the respondents will comply with the receivership order in this or any other case without the coercive sanctions of a civil contempt adjudication firmly in place.

Finally, Mr. Stokes has submitted an affidavit that describes some of the damages he claims to have suffered as a result of the respondents' contumacious conduct. If Mr. Stokes is able to prove his damages through competent evidence, he should be entitled to receive appropriate compensation from the respondents.

The Court accordingly finds Lanier Associates, Kenneth J. Loewinger, Esquire, and Loewinger & Brand, PLLC in civil contempt of court.

### D.

The Court has broad discretionary power upon the entry of a finding of civil contempt to grant full relief through the fashioning of appropriate remedial measures. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193–94, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Link v. District of Columbia*, 650 A.2d 929, 932 (D.C.1994); *District of Columbia v. Jerry M.*, 571 A.2d 178, 191 (D.C.1990). Although the sanctions the Court imposes must be adapted to the particular circumstances of the case, *West Texas Utilities Co., Inc. v. National Labor Relations Board*, 206 F.2d 442, 448 (D.C.Cir.1953), and although the sanctions imposed should be related to the Court's interest in ensuring compliance with the underlying court order, *Jerry M.*, 571 A.2d at 192, the Court "may require the contemnor to perform affirmative acts, even though these actions were not mandated by the underlying decree," *id.* at 191, if requiring such acts is necessary "to coerce the contemnors into compliance with the court's order and to compensate the complainant for losses sustained," *West Texas Utilities Co., Inc.*, 206 F.2d at 448. "The options available to a trial court in order to coerce compliance are numerous even if not unlimited." *Jerry M.*, 571 A.2d at 191 n. 29.

The first and most obvious sanction to be imposed is dismissal of the complaint in this case. Both parties and the receiver agree that Lanier Associates, through Loewinger & Brand, PLLC, brought the action improperly and that the case should be dismissed. Mr. Stokes argues, however, that the complaint should be dismissed with prejudice, while Lanier Associates and The Jason Corporation take the position that the dismissal should be without prejudice.

The dismissal of an action with prejudice is "a drastic remedy" that should be employed "sparingly." *LaPrade v. Lehman,* 490 A.2d 1151, 1155 (D.C.1985). Before a complaint may be dismissed with prejudice, the Court must find that there has been a clear showing of "deliberate" or "contumacious" conduct by the plaintiff, *id.,* and it must consider "the wide range of lesser sanctions which it may impose," including "dismissal without prejudice, an assessment of the defendant's costs and reasonable fees against the plaintiff, or a finding that plaintiff's lawyer is in contempt of court and the imposition of a fine," *id.* at 1155–56.

For the reasons stated previously, the Court has significant concerns about the conduct of Lanier Associates and its former counsel. The Court is constrained to conclude, however, that sanctions less severe than the dismissal of the complaint with prejudice will suffice to coerce compliance with the receivership order and to compensate Mr. Stokes financially for the losses he has sustained. The Court reaches this conclusion in light of the absence of any suggestion by Mr. Stokes that the prosecution of this action has prejudiced his ability to defend against the underlying nonpayment claim on the merits and in light of the interest of the gas company in having in place a receiver that, as contemplated in Judge Diaz' order of November 13, 2001, is able to "take such action as it deems necessary to collect all rents or payments for use and occupancy forthcoming from the tenants of the apartment house." The Court thus concludes that The Jason Corporation and Lanier Associates should not be precluded from prosecuting the receiver's nonpayment claim against Mr. Stokes as long as they do so in a manner consistent with the terms of the receivership order and the now applicable Landlord and Tenant Rule 3–I. The dismissal, accordingly, will be without prejudice.

On the subject of financial losses, Mr. Stokes has submitted an affidavit alleging that he has lost a total of $796.80 in wages while attending court hearings and otherwise defending himself in this case. The affidavit submitted by Mr. Stokes is not alone sufficient to support a finding by the Court. However, the Court will schedule an evidentiary hearing in the near future, and, as a civil contempt sanction, it will impose joint and several liability upon Lanier Associates, Loewinger & Brand, PLLC, and Kenneth J. Loewinger, Esquire for any and all of Mr. Stokes' financial losses shown to have been caused by their contempt of the receivership order.

Mr. Stokes' reasonable attorney's fees will be included in the amount of the monetary sanction to be imposed following the evidentiary hearing. The law firm of Covington & Burling LLP has represented Mr. Stokes throughout the show-cause proceedings, and although counsel from Covington & Burling has graciously stated that his firm is not seeking to recover its fees, "courts commonly award counsel fees in civil contempt proceedings to litigants who would not be entitled to recover them for efforts expended in securing the court's initial order." *Link,* 650 A.2d at 933 n. 6. "The 'American rule' notwithstanding, the con-

temnor is ordinarily required to pay the aggrieved party's counsel fees, even in the absence of a finding of willfulness," *D.D. v. M.T.,* 550 A.2d at 44, and an award of fees as a civil contempt sanction "is therefore the norm," *Link,* 650 A.2d at 933, even where the legal services have been provided without charge, *id.* "When free legal services are provided there may be no direct barrier to the courtroom door, but if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere." *Id.; see also McComb,* 336 U.S. at 194, 69 S.Ct. 497 (stating that a judge who believes that a particular civil contempt sanction is necessary to compensate a victim of the contempt "need not sit supinely by waiting for some litigant [*i.e.,* the victim] to take the initiative"). Mr. Stokes therefore should be prepared at the evidentiary hearing on damages to present competent evidence establishing the amount of his reasonable attorney's fees. The three respondents will be jointly and severally liable for Mr. Stokes' reasonable attorney's fees in an amount to be determined by the Court based upon the evidence presented at the hearing.

The Court also will impose certain nonmonetary sanctions aimed at enforcing full compliance with the receivership order.

As to Lanier Associates, the Court will require the landlord to maintain its position, stated for the first time in a motion filed on July 17, 2006, that its pending nonpayment action against Ms. Prieto, Landlord and Tenant No. 05–21145, should be dismissed as having been filed and prosecuted without a proper appearance by The Jason Corporation. A hearing on that motion is set for July 28, 2006 in the Landlord and Tenant Branch, and counsel for Lanier Associates will be re-

quired to appear at the hearing and argue in favor of dismissal. In addition, the Court will require Dr. Laurence Drell, the owner of Lanier Associates, to file an affidavit that identifies each and every rental property in the District of Columbia that is owned or managed by Lanier Associates, by Dr. Drell, or by any other entity owned or controlled by Lanier Associates or Dr. Drell. For each property identified, the affidavit shall indicate whether the property is subject to a court-ordered receivership. With respect to any property that is subject to a court-ordered receivership, the affidavit shall state the name and docket number of the case in which the receivership order was entered and shall contain a list of each and every nonpayment action that has been pending in the Landlord and Tenant Branch at any time since the entry of the receivership order and, for each such case, shall state (i) the name of the landlord, (ii) the name of the receiver, (iii) the name of the defendant, (iv) the docket number, and (v) the date and type of the next court hearing, if any. Dr. Drell's affidavit will enable the Court to ensure that Dr. Drell and Lanier Associates are not violating any other receivership orders entered pursuant to the Prohibition of Electric and Gas Utility Service Termination to Master–Metered Apartment Building Act of 1980.

As to Loewinger & Brand, PLLC and Kenneth J. Loewinger, Esquire, the Court will require the respondents to file a joint statement, sworn to by Mr. Loewinger and the firm's other principal, Michael Brand, Esquire, certifying that the firm has provided each of its employees, and every one of its clients that owns, manages, or leases rental property in the District of Columbia, with a letter or other written statement setting forth the requirements of the Prohibition of Electric and Gas Utility Service Termination to

Master–Metered Apartment Building Act of 1980 and explaining the holding of *Shannon & Luchs Co. v. Jeter,* 469 A.2d 812 (D.C.1983), and the pertinent provisions of the recently promulgated Landlord and Tenant Rule 3–I. *See* n. 2, *infra.* The sworn statement filed with the Court shall contain the text of the substantive explanation of the receivership statute, the *Jeter* decision, and Rule 3–I that the firm has provided to its employees and clients. The sworn statement also shall indicate whether Loewinger & Brand, PLLC is currently prosecuting in the Landlord and Tenant Branch any nonpayment actions that have been brought with respect to rental properties subject to receivership orders; if Loewinger & Brand, PLLC is prosecuting any such actions, then, for each case, the sworn statement shall indicate (i) the name of the landlord, (ii) the name of the tenant, (iii) the docket number, (iv) the date and type of the next court hearing, (v) the name of the receiver, and (vi) the caption and docket number of the case in which the receiver was appointed. It is the Court's expectation that these non-monetary sanctions will help prevent any future contumacious conduct by Loewinger & Brand, PLLC and Mr. Loewinger.

### IV.

Despite the stated position of Loewinger & Brand, PLLC that it substantially complied with the terms of the receivership order, the firm concedes in its post-hearing brief that it is subject to the imposition of sanctions on the Court's own initiative pursuant to Rule 11(c)(1)(B) of the Superior Court Rules of Civil Procedure. The firm argues, however, that Rule 11(c)(2)(B) precludes the imposition of monetary sanctions because at the hearing on May 2, 2006, three days before the Court issued its show-cause order, Mr. Loewinger offered to "non-suit" the case.

The Court agrees that the imposition of monetary sanctions would be inconsistent with the intent, if not the letter, of Rule 11(c)(2)(B). That rule provides that "[m]onetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." Although Mr. Loewinger never actually moved to dismiss the case at the hearing on May 2, 2006, the transcript of the hearing reflects that he did state a willingness to do so on two occasions.

The Court is similarly disinclined to impose non-monetary sanctions upon any of the respondents under Rule 11. Any such sanctions would be duplicative of the remedial sanctions the Court has decided to impose pursuant to its civil contempt findings.

The Court therefore will discharge its show-cause order to the extent that the order raises the possibility of Rule 11 sanctions.

### V.

For the foregoing reasons, it is this 27th day of July 2006

**ORDERED** that Lanier Associates is hereby adjudicated in civil contempt of court for its prosecution of this action in violation of the receivership order entered on November 13, 2001 in *Washington Gas Light Company v. Lanier Associates,* Civil Action No. 01–8264. It is further

**ORDERED** that the law firm of Loewinger & Brand, PLLC is hereby adjudicated in civil contempt of court for the assistance it provided to its client, Lanier Associates, in prosecuting this action in violation of the receivership order entered on November 13, 2001 in *Washington Gas*

*Light Company v. Lanier Associates,* Civil Action No. 01–8264. It is further

**ORDERED** that Kenneth J. Loewinger, Esquire is hereby adjudicated in civil contempt of court for the assistance he provided to his firm's client, Lanier Associates, in prosecuting this action in violation of the receivership order entered on November 13, 2001 in *Washington Gas Light Company v. Lanier Associates,* Civil Action No. 01–8264. It is further

**ORDERED** that the complaint in this case is hereby **DISMISSED** without prejudice. It is further

**ORDERED** that counsel for Lanier Associates shall appear in the Landlord and Tenant Branch as scheduled on July 28, 2006 and shall argue in favor of dismissal of the complaint in the pending nonpayment action against Ms. Prieto, Landlord and Tenant No. 05–21145. It is further

**ORDERED** that Dr. Laurence Drell, the owner of Lanier Associates, shall file the affidavit required by Section III.D of this opinion by August 31, 2006. It is further

**ORDERED** that Loewinger & Brand, PLLC and Kenneth J. Loewinger, Esquire shall file the joint statement required by Section III.D of this opinion by August 31, 2006. It is further

**ORDERED** that this case shall be set for an evidentiary hearing in courtroom 415 at 2:00 p.m. on Friday, September 8, 2006. At the hearing, Mr. Stokes will have an opportunity to present competent evidence of any wages he has lost and any reasonable attorney's fees or other costs he has incurred, including attorney's fees for which he has not been charged, as a result of the respondents' contumacious conduct. Each of the three respondents will have an opportunity to challenge the evidence presented by Mr. Stokes at the hearing. It is further

**ORDERED** that the order to show cause issued on May 5, 2006 is discharged to the extent that it raised the possible imposition of sanctions pursuant to Rule 11 of the Superior Court Rules of Civil Procedure.

/s/Neal E. Kravits

Neal E. Kravitz, Associate Judge

(Signed in Chambers)

Copies mailed to:

John B. Raftery, Esq.

Decklebaum, Ogens & Raftery, Chtd.

3 Bethesda Metro Center, Suite 200

Bethesda, MD 20814

*Counsel for Lanier Associates*

Anthony Herman, Esq.

Covington & Burling LLP

1201 Pennsylvania Avenue, N.W.

Washington, DC 20004

*Counsel for Clement Stokes*

Samuel M. Shapiro, Esq.

200–A Monroe Street, # 233

Rockville, MD 20850

*Counsel for Loewinger & Brand, PLLC*

Kenneth M. Robinson, Esq.

The Robinson Law Firm

717 D Street, N.W., Fourth Floor

Washington, DC 20004

*Counsel for Kenneth J. Loewinger*

Karen Bower, Esq.

1101 15th Street, N.W.

Washington, DC 20005

*Counsel for The Jason Corporation*

Barbara McDowell, Esq.

Legal Aid Society of the District of Columbia

666 11th Street, N.W., Suite 800

Washington, DC 20001

*Counsel for Amicus curiae*